CHARLES WARD, DEFENDANT IN ERROR, v. JOHN H. DIALOGUE, JUNIOR, SURVIVING PARTNER, &c., PLAINTIFF IN ERROR.

Argued March 8, 1900—Decided June 18, 1900.

The United States Treasury Department issued a printed pamphlet, containing specifications for the building of the revenue cutter "Hudson," and in it called for the Ward boiler, a patented article, of a specified size and mode of construction. The pamphlet contained also a statement, authorized by the patentee, that he would furnish and set up such a boiler for $6,750. *Held,* that the particulars contained in the pamphlet as to the size, mode of construction and price of the boiler were binding on the patentee, but that he might nevertheless refuse to deliver the boiler to the contractor except upon a definite agreement, satisfactory to himself, as to time and mode of payment therefor.

---

On error to the Supreme Court.

For the plaintiff in error, *Voorhees & Reynolds* and *Joseph H. Gaskill.*

For the defendant in error, *Lewis & Laws* and *Joshua E. Borton.*

The opinion of the court was delivered by

ADAMS, J.    This action was brought by Charles Ward to recover from the firm of John H. Dialogue & Son the sum of $1,750, said to be the amount unpaid on the price of a boiler, with interest.    It was proved at the trial and not denied that the boiler had been delivered and accepted; that the contract price was $6,750, and that the sum of $5,000 had been paid on account.    There was no defect in, or partial failure of, the consideration of the contract from defective workmanship.

The defendants set up two defences—first, recoupment for damages occasioned by the plaintiff's failure to complete his contract within the time therein limited; and secondly, items of set-off for work said to have been done and materials said to have been furnished on and for said boiler by the defendants at the plaintiff's request.    The defendants abandoned certain items of the set-off, amounting to $5.29, known as the "King bill."    The trial judge charged the jury that the defendants could not recoup; that the only available defence was set-off; that some of the items of set-off were admitted and should be allowed; and that the remainder of the set-off was disputed.    The jury allowed the entire set-off, except the King bill; deducted the amount so set off from $1,750, the unpaid residue of the contract price, and brought in a verdict for the plaintiff for the remainder, with interest, amounting to $1,943.69.    Exceptions were taken on behalf of the defendants to the exclusion of evidence, to refusal to charge as requested, and to parts of the charge.    The leading question is whether the trial judge erred in excluding the defence of recoupment.    His conclusion resulted from his construction of the documentary evidence.    In order to review this ruling intelligently it is necessary to examine the proofs.

The firm of John H. Dialogue & Son, of Camden, New Jersey, on February 18th, 1892, closed a contract with the United States government to build the revenue marine vessel "Hudson."    The specifications for this piece of work had been issued by the treasury department in the form of a printed

pamphlet, for the information of persons who might wish to bid.

On page 39 of this pamphlet, under the heading "Specifications for the Boilers," is found the following paragraph : " Boiler to be of the Ward pattern, as built by Charles Ward, of Charleston, W. Va., of the size known as ' P 30,' with ' Q ' fire-box, of which the total heating surface is to be substantially 2,490 square feet, and the grate surface 74 square feet. It will be made according to the most approved pattern of this type. The casing of boiler to be 11 feet 6 inches diameter on the base, 11 feet 1 inch diameter above the base, and 9 feet high at the edges, rising conically to the casing about the steam-drum, forming also the base of smoke-pipe. Boiler to be erected in the hull by or under the direction of Mr. Ward on the order of the contractor, secured in place, connected complete, and provided with all necessary fittings, such as grate-bars, steam-gauges, water-gauges, and gauge-cocks, safety-valves, check and blow valves, &c., for permanent and efficient operation. The price charged by the patentee to the contractor to be stated in the bid of the latter."

Before John H. Dialogue & Son received the pamphlet, the department had communicated directly with Mr. Ward and got his price, and had attached to the page of the pamphlet on which the specifications for the boilers appeared, a printed slip that read as follows : " Mr. Ward agrees to furnish and set up the boiler and provide the attachments, &c., including everything on pages 39, 40, 41 and 42 of these specifications (excepting the boiler injector, on page 42), for the sum of six thousand seven hundred and fifty ($6,750) dollars."

The purpose of the department in doing this is manifest. It was to inform and protect bidders, who, unless they knew what such a boiler was to cost, might find themselves at the mercy of a patentee. Mr. Ward, in effect, said to the treasury department : " I make you my agent to say to anyone who may wish to bid on this vessel that my price for the specified boiler will be $6,750." This was, of course, a binding engagement as to price. It was, however, nothing more. Mr.

Ward did not thereby contract with the government to furnish the boiler. It was not intended that Mr. Ward should contract with the government, or that he should furnish a boiler to the government. His agreement was to be with the contractor. Nor did it amount to a contract between Mr. Ward and the as yet unascertained successful bidder. It was merely the preliminary determination of one of the terms of a contract that Mr. Ward expected to make with someone in the future, just as the specifications for the boilers contained preliminary determinations as to other terms of the same anticipated contract. There were terms still to be considered. It might be that a bidder, acceptable to the government, would refuse or neglect or be unable to agree with Mr. Ward as to security, or as to time and mode of payment. We therefore reject the idea that the making of the contract between the government and John H. Dialogue & Son for the building of the "Hudson" included within itself a contract between Mr. Ward and John H. Dialogue & Son for the building and delivery of the boiler. It did almost everything except that. It indicated the parties to such a contract; it ascertained most of the terms; it made it exceedingly probable that an agreement would ensue, but it did not fix all the terms, and it did not make a contract between Mr. Ward and John H. Dialogue & Son.

Mr. Ward went ahead and built the boiler. At the same time he entered upon a correspondence with John H. Dialogue & Son, the main object of which was to reach an agreement as to payments; in other words, to fix those terms of the proposed contract that were yet unsettled. Mr. Ward's first letter is dated March 7th, 1892; is addressed to John H. Dialogue, Esq., and expresses a hope that he will arrange so that Mr. Ward can get to work as soon as possible. On March 16th, 1892, he acknowledges the receipt of a letter of the 14th instant, from Mr. Dialogue, asking for an interview about the boiler, and says that he will see him shortly.

On March 19th, 1892, he answers a letter inquiring as to the weight of the boiler. On March 30th, 1892, he tele-

graphs from Charleston, West Virginia, that he expects to be at Mr. Dialogue's office, at Camden, on the afternoon of the next day. Mr. Ward kept this appointment, and in the presence of Mr. John H. Dialogue, at his office, in Camden, wrote the following letter:

"All agreements are contingent upon strikes, accidents, delays of carriers and other delays unavoidable or beyond our control.

"CHARLESTON, KANAWHA, W. Va.,

March 31st, 1892.

*"John H. Dialogue, Esq., Camden, N. J.:*

"DEAR SIR—I propose to furnish one Ward boiler, size P 30, with a fire-box, having 74 S. F. of grate surface, and substantially 2,490 S. F. of heating surface, all complete, as set forth in specifications for the Ward boiler on pages 39, 40, 41 and 42 of the specifications for the steam propeller 'Hudson,' for the United States revenue cutter service, dated 1892, excepting the boiler injector, on page 42; the whole being delivered complete, set up on board the boat at Mr. Dialogue's works, as per specifications (the privileges of the yard, wharfage, &c., being furnished by Mr. Dialogue without charge), for the sum of six thousand seven hundred and fifty ($6,750) dollars; one-fourth, May 1st, 1892; one-fourth, June 1st, 1892; one-fourth, July 1st, 1892; the balance on completion. In the event of the government being unwilling to estimate on this work until it is delivered at Camden, then the past-due payments all to be paid out of the next estimate."

To this letter Mr. Dialogue answered orally on the spot that the proposition as to payments was not in accordance with the contract. By this he meant that it was not in accordance with the contract between the government and John H. Dialogue & Son. This contract is not in evidence, but it seems to have provided that the price of the vessel should be paid on the completion of the work, or perhaps somewhat later. In other words, Mr. Dialogue's idea was that the provisions of the government contract as to time and mode of payment for the vessel were binding by implication on Mr.

Ward, who was entitled to payment for the boiler only in the same way.   Both parties adhered to their respective positions for nearly a year ; Mr. Ward insisting that there was no completed contract and that he ought not to be asked to let the boiler go without a definite agreement satisfactory to him as to time and mode of payment; and Mr. Dialogue protesting that it was unreasonable to ask his firm to pay for a thing before they could collect from the government.   Meantime Mr. Ward finished the boiler.

Finally, as the result of correspondence, it was agreed that the boiler should be sent on and that John H. Dialogue & Son should pay $5,000 on account of the purchase-money when it was received in the yard, the department consenting to make a payment of that amount on account of the vessel. Mr. Ward's proposition to this effect is contained in his letter of March 3d, 1893, which was accepted by letter of John H. Dialogue & Son, dated March 17th, 1893, acknowledged by Mr. Ward's letter of March 21st, 1893.   The letter of March 17th says : " You are hereby authorized now to deliver this boiler at once in accordance with the foregoing."   These letters completed the contract.   The boiler was shipped from Charleston, West Virginia, on April 6th, 1893, via the Reading railroad system, pursuant to direction contained in a letter of John H. Dialogue & Son, dated December 9th, 1892.   It was consigned to Charles Ward at the ship-yard of John H. Dialogue & Son, Camden ; was delayed in transit and reached Camden on May 29th, 1893.   Mr. Ward was not responsible for this delay, as he had made his agreement specifically contingent upon delays of carriers, and as the carrier had been selected by John H. Dialogue & Son.

On June 13th, 1893, the boiler was tested by the government and was accepted, subject to the completion of some minor work that was done afterwards.   On July 3d, 1893, the sum of $5,000 was paid on account.   The vessel was accepted and delivered on August 17th, 1893, which is said to have been three hundred and forty-one days after the date named in the contract.   The penalty for delay was $20 per

day. The department remitted two hundred and sixty days, imposed the penalty for eighty-one days and deducted $1,620, the aggregate amount of the penalty, from the final payment due John H. Dialogue & Son. No allowance was made for any delay caused by the controversy between Mr. Ward and Mr. Dialogue as to the terms on which the boiler would be furnished, because, in the language of an official letter, the department was "inclined to the opinion that it would have been proper for Mr. Dialogue to come to an agreement with Mr. Ward before he signed the contract, if not before he made his offer." There was an allowance of seventy days for delay in the receipt of the boiler by John H. Dialogue & Son after it had been shipped by Mr. Ward. The period between the date of shipment and the receipt of the boiler at Camden was only fifty-three days. The first item in the claim for recoupment, which reads "eighty-one days' demurrage at $20— $1,620," was therefore evidently imposed for delay that could not, in any view of the case, be attributed to Mr. Ward, and so, with the interest upon it, must be disallowed. Moreover, there is no evidence that makes this penalty of $20 per day, contained in a contract to which Mr. Ward was not a party, binding upon him. The item of "insurance—$150," with interest, must be rejected, for no insurance was paid for. The other items are not sustained by the proof. We conclude that the trial judge did not err in overruling the defence of recoupment.

It results from these considerations that the exceptions to the charge are not well founded. The requests to charge were presented in the form of nine propositions. Some of them are rendered unimportant by the fact that the verdict allowed the whole amount of the set-off. This, at any rate, was a question for the jury. The others are inconsistent with our construction of the contract. The trial judge was right in refusing to charge them. An examination of the exceptions to the exclusion of evidence discloses no error.

The judgment is affirmed.

DIXON, J. (dissenting).    The evidence showed that Mr. Ward had authorized the United States government to insert in its proposal for bids the clause set out in the opinion of the court beginning, "Mr. Ward agrees to furnish," &c.

I think that thereby he made the government his agent to propose and ultimately to close a contract on his behalf in accordance with that proposal.    Thus the agreement between the government and Dialogue & Son became also a contract between that firm and Ward, executed by the government as agent for Ward and by the firm for itself.    The opinion of the court concedes that this instrument bound Ward as to some of its provisions.    I am unable to find legal ground for discrimination, and think it equally bound him as to all, having the same force as if he and the firm had personally executed it as a separate document.    It follows that the delay caused by his refusal to deliver the boiler until a further agreement should be made, as to the time for paying the stipulated price, was wrongful and chargeable to him, and that recoupment for that delay should have been allowed to the defendant.

*For affirmance*—MAGIE (CHANCELLOR), DEPUE (CHIEF JUSTICE), VAN SYCKEL, GARRISON, LIPPINCOTT, GUMMERE, LUDLOW, BOGERT, HENDRICKSON, ADAMS, VREDENBURGH.    11.

*For reversal*—DIXON.    1.